UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
                                                            :
TRUSTEES OF THE NEW YORK CITY DISTRICT                       :
COUNCIL OF CARPENTERS PENSION FUND,                          :         22 Civ. 640 (PAE)
WELFARE FUND, ANNUITY FUND, and                              :
APPRENTICESHIP, JOURNEYMAN                                   :         OPINION & ORDER
RETRAINING, EDUCATIONAL AND INDUSTRY                         :
FUND, TRUSTEES OF THE NEW YORK CITY                          :
CARPENTERS RELIEF AND CHARITY FUND, the                      :
CARPENTER CONTRACTOR ALLIANCE OF                             :
METROPOLITAN NEW YORK, *and the* NEW                         :
YORK CITY DISTRICT COUNCIL OF                                :
CARPENTERS,                                                  :
                                                            :
                                    Petitioners,             :
                                                            :
                  -v-                                        :
                                                            :
M.A.B. RENOVATION GROUP CORP.,                               :
                                                            :
                                    Respondent.              :
                                                            :
------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

Petitioners—the Trustees of the New York City District Council of Carpenters Pension

Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational

and Industry Fund (the "ERISA Funds"); Trustees of the New York City Carpenters Relief and

Charity Fund (the "Charity Fund"), Carpenter Contractor Alliance of Metropolitan New York

(the "CCA," together, with the ERISA Funds and the Charity Fund, the "Funds"), and the New

York City District Council of Carpenters (the "Union")—seek confirmation of an arbitral award

issued against respondent M.A.B. Renovation Group Corporation ("MAB"). *See* Dkt. 1 ("Pet."),

Ex. H ("Award").  MAB is an employer bound by a collective bargaining agreement between

itself and the Union. *See* Pet. ¶ 14.  On January 25, 2022, petitioners commenced this action,

pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. For the following reasons, the Court confirms the Award.

I.      **Background**[1]

A.      **The Parties and Their Agreements**

The ERISA Funds are employer and employee trustees of multiemployer labor-management funds organized and operated in accordance with ERISA. Pet. ¶ 4. The Trustees are fiduciaries of the ERISA Funds within the meaning of section 3(21) of ERISA, 29 U.S.C. § 1002(21). *Id.* The ERISA Funds maintain their principal place of business at 395 Hudson Street, New York, New York 10014. *Id.*

The Charity Fund was established under the Internal Revenue Code, 26 U.S.C. § 501(c)(3). *Id.* ¶ 5. The Charity Fund maintains its principal place of business at 395 Hudson Street, New York, New York 10014. *Id.*

The CCA is a New York not-for-profit corporation. *Id.* ¶ 6. It maintains its principal place of business at 245 5th Avenue, New York, New York 10016. *Id.*

The Union is a labor organization that represents employees in an industry affecting commerce as defined by Section 501 of the LMRA. *Id.* ¶ 7. It is the certified bargaining representative for certain employees of MAB. *Id.*

MAB is a domestic business corporation incorporated and organized under the laws of the State of New York. *Id.* ¶ 8. At relevant times, MAB was an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 501 of the LMRA, 29 U.S.C. § 142. *Id.*

---

[1] The following undisputed facts are derived from the Petition and the Award.

MAB maintains its principal place of business at 207 W. 102nd Street, Apt. 5D, New

York, NY 10025. *Id.* MAB is bound by a collective bargaining agreement between itself and

the Union (the "CBA"). *Id.* ¶¶ 10, 14.

### B.     The Project Labor Agreements

In or around July 2016, MAB executed a Letter of Assent ("LOA") with respect to the

New York City Department of Design and Construction ("NYCDDC") project known as Build it

Back Staten Island Outer Borough Residential Market Recovery ("Build it Back Staten Island").

*Id.* ¶ 9.  By executing the Build it Back Staten Island LOA, MAB became bound to the

NYCDDC's Build it Back Queens Outer Borough Residential Market Recovery Project Labor

Agreement ("PLA"). *Id.* ¶ 10.

At or around the same time, MAB completed an Administration Form, further

effectuating its agreement with the Union. *Id.* ¶ 11.

Under the PLA, MAB was required to "promptly pay contributions on behalf of all

employees covered by [the PLAs] to those established jointly trusteed employer benefit funds

designated set forth in the applicable Collective Bargaining Agreements in Schedule 'A.'" *See*

Dkt. 1, Ex. B ("PLA"), Art. 11, Sec. 2(a).  Additionally, under the PLA, "all fringe benefit

collection and delinquency matters will be governed by the Schedule 'A' collective bargaining

agreement." *Id.*, Art. 11, Sec. 2(c).

### C.     The Collective Bargaining Agreement

By way of its assent to the PLA, MAB also became bound by the applicable collective

bargaining agreement with the Union, to the extent such terms did not conflict with the PLAs.

*Id.*, Art. 2, Sec. 4.  As per Schedule A of the PLAs, MAB was bound to Independent Building

Construction Agreements with the Union covering the collective period July 1, 2011 through

June 30, 2024 (the "CBAs"). Pet. ¶ 15. Accordingly, at all relevant times, MAB was and is bound to a series of CBAs with the Union.

The CBAs require MAB to, *inter alia*: (1) make contributions to the Funds for all work performed within the trade and geographical jurisdiction of the Union, Dkt. 1, Exs. D–E, Art. XV, Sec. 1; and (2) furnish its books and payroll records when requested by the Funds for the purpose of conducting an audit to ensure compliance with required benefit fund contributions, *Id.*, Art. XV, Sec. 1. *Id.* ¶¶ 17–18.

The CBAs also bind employers to the policies, rules, and regulations adopted by the Funds. *See id.*, Art. XV, Sec. 3. The Trustees of the Funds established a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Pet. ¶ 20. The Collection Policy states that "[t]he Outside Accounting Firms engaged by the Funds shall periodically review and/or audit the books and records of all of the employers bound by or signatory to a collective bargaining agreement with the District Council or any other agreements under which they are obligated to contribute to the Funds." *See* Dkt 1. Ex. F, Sec. IV (1). Under the Collection Policy, in the event that an employer refuses to comply with the CBAs' audit procedures, the Funds "shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period…[a] determination under this paragraph shall constitute presumptive evidence of delinquency." *See id.* Sec. IV (12).

As to disputes, the CBAs provide that in the event "any dispute or disagreement arise between the parties hereto, or between the Union and any signatory Employer concerning any claim arising from payment to the Fund of principle and/or interest which is allegedly due, either

party may seek arbitration of the dispute before the impartial arbitrator designated hereunder[.]"
Dkt.1, Exs. D–E, Art. XV, Sec. 7.

The CBAs further provide that "[t]he arbitrator shall have full and complete authority
to…fashion an appropriate remedy including, but not limited to, monetary damages and all other
remedies permitted by federal or state law…the costs of the arbitration, including fees to be paid
to the arbitrator shall be included in the award and shall be borne by the losing party." *Id.*

Under the CBAs and Collection Policy, should the Funds be required to arbitrate a
dispute or file a lawsuit over unpaid contributions, the Funds shall be entitled to collect, in
addition to the delinquent contributions: (1) interest on the unpaid contributions at the prime rate
of Citibank plus 2%; (2) an amount equal to the greater of (i) the amount of interest on the
unpaid contributions or (ii) liquidated damages in the amount of 20% of the unpaid
contributions; and (3) reasonable costs and attorneys' fees incurred by the Funds in collecting the
delinquencies. Dkt. 1, Exs. D–E, Art. XV, Sec. 6; Ex. F, Sec. V.

**D.    The Arbitration Award**

Pursuant to the Collection Policy, Petitioners requested an audit of MAB covering the
period November 17, 2016 through the present in order to determine whether MAB had remitted
the proper amount of contributions to the Funds.  Pet. ¶ 26.  A dispute arose between the parties
when MAB failed to provide its books and records for the purposes of conducting the audit.  *Id.*
¶ 27.  When MAB refused to submit to an audit, the Funds conducted an estimated audit
pursuant to the Collection Policy.  It revealed that MAB had failed to remit contributions to the
Funds in the principal amount of $227,021.22.  *Id.* ¶ 28.

Pursuant to the CBAs' arbitration clause, Petitioners initiated arbitration before the
designated arbitrator, Roger E. Maher.  The arbitrator noticed this arbitration by mailing a Notice
of Hearing to MAB by regular and certified mail.  *Id.* ¶ 29.

Thereafter, the arbitrator held a hearing and rendered his award, in writing, dated August 6, 2021, and resolving the parties' dispute (the "Award"). *Id.* ¶ 30. Specifically, the arbitrator found that MAB had violated the CBAs when it failed to permit the Funds to audit MAB's books and records. The arbitrator ordered MAB to pay the Funds the sum of $310,114.79, consisting of: (1) the estimated principal deficiency of $227,021.22, (2) interest thereon of $34,789.33, (3) liquidated damages of $45,404.24, (4) court costs of $400, (5) attorney's fees of $1,500, and (6) arbitrator's fee of $1,000. *See id.* ¶ 31; Award.

The arbitrator also found that interest of 5.25% is to accrue on the aggregate amount of the Award from the date of the issuance of the Award. *See* Award. As of the date of this Petition, MAB has failed to pay any portion of the Award. *Id.* ¶ 33.

The Award has not been vacated or modified and no application for such relief is currently pending. *Id.* ¶ 34.

### E.    This Action

On January 25, 2022, after MAB failed to comply with petitioners' demand for the Award amount, petitioners filed this action seeking to confirm the Award. Dkt. 1. To date, MAB has not opposed the Petition or otherwise appeared in this case. Pet. ¶ 34.

## II.    Discussion

### A.    Applicable Legal Standards

"Arbitration awards are not self-enforcing"; "they must be given force and effect by being converted to judicial orders by courts." *Power Partners MasTec, LLC v. Premier Power Renewable Energy, Inc.*, No. 14 Civ. 8420 (WHP), 2015 WL 774714, at *1 (S.D.N.Y. Feb. 20, 2015) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). The FAA provides a "'streamlined' process for a party seeking 'a judicial decree confirming an award.'"

*Salzman v. KCD Fin., Inc.*, No. 11 Civ. 5865 (DLC), 2011 WL 6778499, at *2 (S.D.N.Y. Dec. 21, 2011) (quoting *Hall St. Assocs. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008)).

"Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court, and the court must grant the award unless the award is vacated, modified, or corrected." *D.H. Blair*, 462 F.3d at 110 (citation and internal quotation marks omitted). In this Circuit, "[t]he showing required to avoid summary confirmation of an arbitration award is high." *Willemijn Houdstermaatschappij, BV v. Standard Microsys. Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 376 (2d Cir. 1987)); *see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

Review of an arbitral award by a district court "is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *Salzman*, 2011 WL 6778499, at *2 (quoting *Willemijn*, 103 F.3d at 12). Indeed, "an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is 'a barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J*, 954 F.2d 794, 797 (2d Cir. 1992) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co.*, 579 F.2d 691, 704 (2d Cir. 1978)).

A motion to confirm an arbitral award against a party that has failed to appear in the action is evaluated under the legal standards applicable to a motion for summary judgment. *See D.H. Blair*, 462 F.3d at 109–10. To prevail on such a motion, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, the court must view all facts

"in the light most favorable" to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (citations omitted).  In determining whether there are genuine issues of material fact, the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

"Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004); *see also Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).  In reviewing an unopposed motion for confirmation of an arbitration award, a court:

> may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.  If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*

*D.H. Blair*, 462 F.3d at 110 (emphasis in original) (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244). Where "[t]here is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law [. . .] a court must grant an order to confirm an arbitration award upon the timely application of a party." *Herrenknecht Corp. v. Best Rd. Boring*, No. 06 Civ. 5106 (JFK), 2007 WL 1149122, at *2 (S.D.N.Y. Apr. 16, 2007) (citing 9 U.S.C. § 9; *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)).

### B.    Confirmation of the Arbitral Award

On the basis of the Award, and on the very limited review that is appropriate, the Court finds that summary judgment is warranted, as petitioners have shown there is no material issue of fact in dispute.  The arbitrator acted within the scope of the authority granted him by the parties and found "substantial and credible evidence" that MAB was required to make certain payments

to the Funds, and that it failed to do so, as revealed by evidence submitted by petitioners at the arbitration hearing.  *See* Award.  From this, the Court concludes that there is at least a "barely colorable justification for the outcome reached," and, by all indications, a more than colorable one.  *Landy Michaels Realty Corp.*, 954 F.2d at 797.  Accordingly, the Court confirms the Award in favor of petitioners for a total amount of $310,114.79.

C.      **Attorneys' Fees Associated with this Action**

Independent of the fee component of arbitrator Maher's Award, petitioners also request fees and costs incurred in bringing the instant Petition.  Pet. ¶ 36.  Petitioners have included contemporaneous time sheets in support of their request.  *See* Pet., Ex. I.  Absent statutory authority, however, the Court ordinarily may not grant an application for attorneys' fees.  *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12 Civ. 005 (JMF), 2012 WL 3744802, at *4 (S.D.N.Y. Aug. 29, 2012) (parties not necessarily entitled to fees and costs associated with bringing petition to confirm arbitration award for recovery of delinquent contributions) (citing *Abondolo v. Jerry WWHS Co., Inc.*, 829 F. Supp. 2d 120, 130 (E.D.N.Y. 2011)); *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Stainless Partners, Inc.*, No. 07 Civ. 3542 (CPS), 2007 WL 3232260, at *3 (E.D.N.Y. Oct. 31, 2007) (denying request for attorneys' fees where petitioners failed to submit any time records).  Section 301 of the LMRA does not provide such authority.

In the absence of such authority, the Court may nonetheless award attorneys' fees under its inherent equitable powers when opposing counsel acts in bad faith.  *See Trs. of N.Y. Dist. Council of Carpenters Pension Fund*, 2012 WL 3744802, at *4.  Petitioners, however, have not provided evidence upon which the Court could find bad faith here.  Accordingly, the Court does not award fees and costs associated with bringing the Petition.

### D.     Post-Judgment Interest

Petitioners also seek post-judgment interest. Pet. ¶ 45. Such interest "shall be allowed on any money judgment in a civil case recovered in a district court . . . at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Awards of post-judgment interest under § 1961 are mandatory. *See Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013) (collecting cases). An order confirming an arbitral award is to be "docketed as if it was rendered in an action," and "have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." 9 U.S.C. § 13. Accordingly, § 1961 applies to actions to confirm arbitral awards. *See, e.g., Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 101–02 (2d Cir. 2004) (awarding post-judgment interest in arbitration case). The Court therefore also awards interest to accrue from the date judgment is entered until payment is made.

## CONCLUSION

For the reasons stated above, the Court confirms the Award in favor of petitioners and issues judgment in the amount of $310,114.79, plus pre-judgment interest from the date of the Award through the date of judgment, with interest to accrue at the annual rate of 5.25%, plus post-judgment interest pursuant to 28 U.S.C. § 1961(a).

The Court respectfully requests that the Clerk of Court close this case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 21, 2022
       New York, New York